Stillman *v.* Stillman.

ELIZA STILLMAN *v.* C. A. STILLMAN.

CHANCERY PLEADING AND PRACTICE. *Lien for solicitors' fees.* An agreement between the complainant and solicitors in the cause, in whose favor a decree had been rendered declaring a lien for specific fees on the property of the defendant, will not bind the defendant, and a subsequent decree thereon for a sale of the property for the satisfaction of claims of some of those solicitors would be erroneous as to the defendant. He has a right to stand upon the original decree, to be executed as an entirety.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

FRAZER & DENT for Complainant.

SMITH & COLLIER and HUMES & POSTON for Defendant.

COOPER, J., delivered the opinion of the Court.

Upon a former hearing of this divorce suit, upon the question of alimony, the Chancellor's decree allotting to the complainant as alimony leasehold property to the value of $20,000, and the arrears of allowances *pendente lite*, was affirmed, with the addition "that the reasonable costs of Complainant in procuring her rights by the aid of solicitors should be included in the costs of the

cause, to be a lien on the property in the hands of the receiver not allotted to complainant as part of her permanent alimony:" *Stillman* v. *Stillman,* 7 Bax., 169, 186.

The decree of this Court specified the two legal firms representing the complainant who were to have the benefit of the lien, and gave them also a lien on the property allotted as alimony for the same fees. The decree also allowed certain solicitors named liens respectively on the property not allotted as alimony, subordinate to the liens of the complainant's solicitors, for the amounts due them for professional services on behalf of the defendant.

The cause was remanded to ascertain the amount due to the complainant for arrears of allowances made to her for support and counsel fees pending the litigation; to ascertain the amounts due to her solicitors named for professional services; and with leave to the solicitors named of the defendant to take the steps necessary to enforce the lien declared in their favor.

After the remand, a decree of reference was made by the Chancellor in accordance with the decree. The Clerk and Master reported the amounts due to the several counsel named in the decree of the Supreme and Chancery Courts, and also found that the complainant was indebted to one legal firm in the sum of $2,000, and to another lawyer, not thus named, $250, for professional services in the divorce suit.

The complainant and the defendant filed excep-

tions to the Clerk and Master's report, to the effect that the fees allowed to each of the solicitors of the complainant named in the decree, and to one of the defendant's solicitors, specifying him, were each " excessive and not sustained by the proof."

The Chancellor set aside the report as to the solicitors not named in the decree, overruled the exceptions, and confirmed the residue of the report, and ordered the property on which the fees had been declared a lien to be sold in satisfaction thereof, in the order directed by the decree of this Court, unless otherwise paid. This decree was rendered on the 24th of May, 1875.

On the 28th of June, 1875, a written agreement was entered into by and between the complainant and the solicitors whose fees had been allowed in the foregoing decree, and the legal firm in whose favor a fee of $2,000 had been reported by the Clerk and Master which was stricken out by the Chancellor, by which each of these solicitors agreed to receive from the complainant so much in cash, and her two notes on time for a specified sum each, and to assign to her their several claims, with the right to enforce them and the liens given for their security. They stipulated that they would give up their liens on the property assigned as alimony, reserving, however, the right to enforce the lien on the other property to the extent of the notes unpaid.

18—VOL. 4.

It was further agreed that in the event an appeal from the decree fixing the. fee was taken by the defendant, and any reduction should be made in the amounts allowed, the solicitors would abate their notes in the same proportion.

On the 29th of June, 1875, a decree was entered by the Chancellor, based on this agreement, declaring the rights of the parties in accordance with its terms. This decree recites that the exception to· the Clerk and Master's report in relation to the fee of $2,000, which had not been allowed by the previous decree, was withdrawn, and "said report·by agreement is confirmed," but the claim is subordinated to the other attorneys' fees. The agreement, by which the report is confirmed, is confined to the contracting parties. By the same decree, a report of the Clerk and Master, showing the amount due to the · complainant · for arrearages of allowance to be $5,570.40, was ratified and confirmed, and the property, other than that allotted in alimony, ordered to be sold in satisfaction thereof.

On the 10th of March, 1877, upon motion of the two legal firms whose fees had been allowed by the decree of the 24th of May, 1875, for services on behalf of complainant, and proof that the notes given to them by the complainant under the agreement of the 28th of June, 1875, were due and unpaid, the Chancellor directed the order of sale under the previous decree to be executed

Stillman v. Stillman.

by a sale of a sufficiency of the property to satisfy the amount due upon these unpaid notes.

The defendant prayed "an appeal in this cause," which was granted, and perfected the appeal by giving bond as required by law on the 16th of April, 1877.

By the decree of this Court the cause was remanded to ascertain the amount due to complainant for unpaid allowances made pending the litigation, and to determine the fees of the solicitors named. and subject the property in controversy in a given order to their satisfaction, under the liens declared. Strictly, the references should have been acted upon at the same time, so as to have had but one decree, and, if either party desired, one appeal. Separate reports seem to have been made, but they were both acted upon during the same term. The two decrees, of the 24th of May and 29th of June, 1875, settled the rights of the complainant and the solicitors, and would have authorized an appeal, by leave of the Court, before sale, under the Code, sec. 3157. Neither party did, in fact, pray an appeal, and, after the expiration of the term, neither an appeal nor a writ of error would lie until a sale thereunder: *Douglas* v. *White*, 1 Lea, 201; *Pond* v. *Trigg*, 5 Heis., 532; *Hume* v. *Commercial Bank*, 1 Lea, 45

The agreement between the complainant and the solicitors, to which, so far as appears, the defendant was no party, only affected the relative rights of the contracting parties to the fund decreed on

the 24th of the previous month. By that agreement the complainant wholly, and the solicitors to the extent of their unpaid debt, could have enforced that decree. In either event, the decree, as against the defendant, could only be executed as an entirety. The agreement, and the decree thereon, so far as it affected his rights, were *coram non judice* and void: *Rice* v. *Alley*, 1 Sneed, 52; *Dillard* v. *Harris*, 2 Tenn. Ch., 193. The Court had no authority to affect his rights by virtue of an agreement to which he was no party.

In this view, that agreement and the decree thereon can only be looked to for the purpose of adjusting the rights of the contracting parties to the fund to be derived from the execution of the decree of sale of the 24th of May, 1875, so far as it decreed a sale of property other than that allotted as alimony. They would confer no authority to change the former decree, or to give a new decree against the defendant

The decree of the 10th of March, 1877, if it be treated as a simple renewal of the order of sale of the 24th of May, 1875, would not authorize an appeal which would bring up the earlier decree, nor would it if treated as a new decree be binding on the defendant at all. The only effect of the appeal would be to test the validity of the decree itself: *Caldwell* v. *Hodsden*, 1 Lea, 45. That decree is most clearly erroneous so far as the defendant is concerned. He has a right to stand upon the decree as originally rendered. The agree-

Stillman *v.* Stillman.

ment could not affect him, and would not, therefore, justify any decree whatever against him or his property. The solicitors, at whose instance it was made, can only proceed against him by executing the original decree in its entirety. The agreement may be looked to in adjusting the rights of the contracting parties in the fund realized.

The decree of the 10th of March, 1877, will be reversed, and the case remanded to stand as before the rendition of said decree. The solicitors, at whose instance it was rendered, will pay the costs thereof, and of this Court.